1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BRANDON EUGENE HUNTER,                    No.  2:22-cv-1281 DB P

12                    Plaintiff,

13          v.                                  ORDER

14    JACKOWITZ, et al.,

15                    Defendants.

16

17          Plaintiff is a county inmate proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Plaintiff claims defendants used excessive force, subjected him to cruel and

19   unusual punishment, and retaliated against him.  Presently before the court is plaintiff's motions

20   to proceed in forma pauperis (ECF Nos. 2, 8) and his complaint for screening (ECF No. 1).  For

21   the reasons set forth below, the undersigned will grant the motions to proceed in forma pauperis

22   and dismiss the complaint with leave to amend.

23                              **IN FORMA PAUPERIS**

24          Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. §

25   1915(a).  (ECF Nos. 2, 8.)  Accordingly, the request to proceed in forma pauperis will be granted.

26          Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28 U.S.C. §§

27   1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in

28   accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct

the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

**SCREENING**

I.      **Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell AtlanticCorp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic,

550 U.S. at 555.  In reviewing a complaint under this standard, the court must accept as true the

allegations of the complaint in question, <u>Hospital Bldg. Co. v. Rex Hospital Trustees</u>, 425 U.S.

738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all

doubts in the plaintiff's favor.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969).

      The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution .
> . . shall be liable to the party injured in an action at law, suit in equity,
> or other proper proceeding for redress.

42 U.S.C. § 1983.  Here, the defendants must act under color of federal law.  <u>Bivens</u>, 403 U.S. at

389.  The statute requires that there be an actual connection or link between the

actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  <u>See

Monell v. Dept. of Social Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362

(1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

omits to perform an act which he is legally required to do that causes the deprivation of which

complaint is made."  <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

      Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

their employees under a theory of respondeat superior and, therefore, when a named defendant

holds a supervisorial position, the causal link between him and the claimed constitutional

violation must be specifically alleged.  <u>See Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979);

<u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations

concerning the involvement of official personnel in civil rights violations are not sufficient.  <u>See

Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

## I.      Allegations in the Complaint

      Plaintiff states the events giving rise to the allegations in the complaint occurred while he

was incarcerated at the Sacramento County Main Jail.  (ECF No. 1 at 1.)  He has identified the

following defendants: (1) deputy Jackowitz; (2) deputy Leonard; (3) deputy Sargetis; (4) deputy

Long; (5) deputy Higley; (6) sergeant Allbee; (7) sergeant Wade; (8) lieutenant Ayers; (9) the

1 | Sacramento County Sheriff's Department; (10) Sacramento County; and (11) the Commission on
2 | Peace Officer Standards and Training.  (Id. at 1-3.)

3 |      Plaintiff alleges on February 1, 2022, deputy Jackowitz pushed him while his back was to
4 | Jackowitz.  (Id. at 5.)  He further states Jackowitz helped tackle him to the ground.  Plaintiff
5 | alleges Higley slammed his head on the ground approximately six times.  (Id.)  Deputy Leonard
6 | "temporarily placed [plaintiff] in a choke hold that has been banned in California, and help[ed]
7 | tackle [him] to the ground."  He further alleges Sargetis tackled him to the ground and Long tried
8 | to pin his legs to the ground.  Finally, plaintiff alleges that sergeant Wade supervised the assault,
9 | Allbee filmed the assault and both failed to stop the attack.  (Id. at 5-6)

10 |      Plaintiff claims the Sacramento County Sheriff's Department "is responsible for the poor
11 | training of its deputies and there [sic] actions" during the incident, Sacramento County employs
12 | the defendants and is responsible for their conduct, and the Commission on Peace Officer
13 | Standards and Training is "responsible for the poor training of defendants and certifying them for
14 | duty."  (Id. at 6.)

15 |      Plaintiff claims that defendants "are also guilty of cruel and unusual punishment and for
16 | what petitioner believes was retaliation for petitioner's charges, by assaulting petitioner on
17 | 2/1/22."  (Id. at 7.)

18 |      Plaintiff states sergeant Brace and lieutenant Ayers put plaintiff "on discipline for being
19 | assaulted."  (Id. at 8.)  He further alleges that because he is "an uncentenced [sic] inmate" he is
20 | not subject to punishment.  As a result of his placement on discipline, he alleges he has been
21 | housed in a high security unit, receives less than seven hours of out of cell time per week, and has
22 | not received outdoor recreation in violation of the Sacramento v. Mays[1] settlement.  (Id.)
23 | ////
24 | ////
25 | ////
26 |
27 |
28 |

---

[1] The court presumes that plaintiff is referencing Mays v. County of Sacramento, No. 2:18-cv-02081 TLN KJN, 2019 WL 3729815 (E.D. Cal. Aug. 8, 2019), which involved claims from Sacramento County Jail inmates regarding jail conditions that violated their Eighth and Fourteenth Amendment rights as well as their rights under the Americans with Disabilities Act.

1     **II.**      **Does Plaintiff State a Claim under § 1983?**

2           **A. Excessive Force[2]**

3       "Inmates who sue prison officials for injuries suffered while in custody may do so under

4 the Eighth Amendment's Cruel and Unusual Punishment Clause, or if not yet convicted, under

5 the Fourteenth Amendment's Due Process Clause." Castro v. County of Los Angeles, 833 F.3d

6 1060, 1067-68 (9th Cir. 2016) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). A pretrial

7 detainee who brings an excessive force claim under the Fourteenth Amendment must state facts

8 showing that "the force purposely or knowingly used against him was objectively unreasonable."

9 Kinsley v. Hendrickson, 576 U.S. 389, 396-97 (2015).

10       Based on the facts alleged in the complaint, plaintiff may be able to state a claim based on

11 the actions of the officers. However, in any amended complaint plaintiff should include facts

12 indicating what preceded defendant Jackowitz's actions. See Kingsley v. Hendrickson, 576 U.S.

13 389, 396-97 (2015) (a plaintiff "must show only that the force purposely or knowingly used

14 against him was objectively unreasonable."). Plaintiff should also indicate whether officers

15 issued any commands just prior to or during the incident and whether or not he complied with any

16 commands. Accordingly, the court finds that the allegations in the complaint are insufficient to

17 state a potentially cognizable excessive force claim.

18           **B. Failure to Protect**

19       The Ninth Circuit has stated that in order to state a failure to protect claim a pretrial

20 detainee must allege facts showing: "(1) The defendant made an intentional decision with respect

21 to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at

22 substantial risk of suffering serious harm; (3) The defendant did not take reasonable available

23 measures to abate that risk, even though a reasonable officer in the circumstances would have

24 appreciated the high degree of risk involved—making the consequences of the defendant's

25 ////

26 _____

27 [2] Plaintiff appears to be a pretrial detainee (ECF No. 1 at 8), therefore his excessive force and failure to protect claims fall under the Fourteenth rather than the Eighth Amendment. Graham v.

28 Connor, 490 U.S. 386, 395 n.10 (1989) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.").

1    conduct obvious; ad (4) By not taking such measures, the defendant caused the plaintiff's

2    injuries." Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016).

3          Plaintiff alleges defendants Wade and Allbee, observed the incident and failed to

4    intervene. (ECF No. 1 at 5-6.) Such allegations could be sufficient to state a claim for failure to

5    protect. However, because the court has found that the allegations fail to state an excessive force

6    claim, the court declines to find that plaintiff has stated a cognizable failure to protect claim.

7             **C. Retaliation**

8          "Within the prison context, a viable claim of First Amendment retaliation entails five

9    basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

10    because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

11    exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

12    correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and

13    citations omitted).

14          Plaintiff states that he believes defendants' actions were in retaliation for his "charges."

15    (ECF No. 1 at 7.) In order to state a claim for retaliation, plaintiff must state facts showing that

16    defendants took adverse action against him because of plaintiff's engagement in conduct

17    protected by the First Amendment. Rhodes, 408 F.3d at 567-68. Plaintiff has not identified any

18    protected conduct that led to defendants' actions. Thus, he has not stated a cognizable retaliation

19    claim. See Hunter v. Sacramento County, No. 2:22-cv-1282 EFB (PC), 2022 WL 6231313, at *2

20    (E.D. Cal. Oct. 7, 2022) (finding allegations that defendants retaliated because of his "current

21    charged offenses," failed to state a claim).

22             **D. Placement in Secure Housing as Punishment**

23          Plaintiff alleges that he was placed in a high-security unit which violated his rights

24    because as a pretrial detainee he should not have been punished. (ECF No. 1 at 8.)

25          The Ninth Circuit has held that a pretrial detainee "may not be punished without a due

26    process hearing." Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996). However, "to constitute

27    punishment, the harm or disability caused by the government's action must either significantly

28    ////

1   exceed, or be independent of, the inherent discomforts of confinement."). <u>Demery v. Arpaio</u>, 378

2   F.3d 1020, 1030 (9th Cir. 2004).

3          Pretrial detainees have a substantive due process right against restrictions that amount to

4   punishment. <u>Valdez v. Rosenbaum</u>, 302 F.3d 1039, 1045 (9th Cir. 2002) (citing <u>United States v.</u>

5   <u>Salerno</u>, 481 U.S. 739, 746 (1987)). "For a particular governmental action to constitute

6   punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2)

7   the purpose of the governmental action must be to punish the detainee." <u>Demery</u>, 378 F.3d at

8   1029 (citing <u>Bell</u>, 441 U.S. at 538).

9          "[P]retrial detainees may be subject to disciplinary segregation only with a due process

10  hearing to determine whether they have in fact violated any rule." <u>Mitchell</u>, 75 F.3d at 524

11  (footnote omitted). Detainee's may, however, "be segregated for administrative or security

12  reasons with less procedural due process . . . ." <u>Henderson v. City and County of San Francisco</u>,

13  No. C-05-234 VRW, 2006 WL 3507944, at *14 (N.D. Cal. Dec. 1, 2006).

14         The allegations in the complaint do not indicate whether jail officials held a hearing

15  before plaintiff was placed in high security housing. "[I]f a particular condition or restriction of

16  pretrial detention is reasonably related to a legitimate governmental objective, it does not, without

17  more, amount to 'punishment.'" <u>Bell v. Wolfish</u>, 441 U.S. 520, 539 (1979).

18         Accordingly, the undersigned finds the allegations insufficient to state a potentially

19  cognizable claim. In any amended complaint, plaintiff should include additional facts indicating

20  whether a hearing was held, and what, if any reason given to plaintiff justifying placement in a

21  secure housing unit.

22                 **E. Outdoor Exercise**

23         Plaintiff alleges he receives "less than 7 hours a week out of [his] cell" and "has received

24  no outdoor recreation at all." (ECF No. 1 at 8.)

25         "Exercise is one of the basic human necessities" protected by both the Eighth and

26  Fourteenth Amendments. <u>Pierce v. County of Orange</u>, 526 F.3d 1190, 1211-12 (9th Cir. 2008)

27  (citing <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1457 (9th Cir. 1993)). However, "deprivation of

28  ////

1    outdoor exercise" is not a per se violation of detainee's rights.  Spain v. Procunier, 600 F.2d 189,

2    199 (9th Cir. 1979).

3         Plaintiff must provide additional facts so that the court may determine whether the lack of

4    outdoor exercise amounts to a violation of plaintiff's Fourteenth Amendment rights.  As alleged

5    in the complaint, it is unclear how long plaintiff has been denied access to outdoor exercise.  It is

6    also unclear whether the denial relates to a disciplinary or security concerns.  In any amended

7    complaint, plaintiff should provide additional information regarding the amount of time he has

8    been denied outdoor exercise, how frequently and for what duration he is allowed indoor

9    exercise, and if such restrictions have been imposed in relation to his disciplinary or security

10   status.

11        **F.  Municipal Liability**

12        Plaintiff has identified the County of Sacramento as a defendant because it "employ's [sic]

13   the Listed Defendants and is responsible for there [sic] conduct."  (ECF No. 1 at 6.)  Plaintiff has

14   not provided any additional factual allegations regarding the County of Sacramento.

15        "In order to establish municipal liability, a plaintiff must show that a 'policy or custom'

16   led to the plaintiff's injury."  Castro v. County of Los Angeles, 833 F.3d 1060, 1073 (9th Cir.

17   2016) (quoting Monell, 436 U.S. at 694).  Liability for a custom or practice will only attach if a

18   plaintiff pleads facts showing that his injury was caused by a "permanent and well-settled"

19   practice.  Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989) overruled on

20   other grounds by Bull v. City and County of San Francisco, 595 F.3d 964 (9th Cir. 2010).

21        A "failure to train" or "failure to supervise" theory can be the basis for a supervisor's

22   liability under § 1983 in only limited circumstances, such as where the failure amounts to

23   deliberate indifference.  See City of Canton, Ohio v. Harris, 489 U.S. 378, 387-90 (1989) (A

24   failure to train or supervise may satisfy this criteria if, "in light of the duties assigned to specific

25   officers or employees[,] the need for more or different training is so obvious, and the inadequacy

26   so likely to result in the violation of the constitutional rights, that the policymakers of the city can

27   reasonably be said to have been deliberately indifferent to the need.")  However, "[t]he cases in

28   which supervisors have been held liable under a failure to train/supervise theory involve

                                                  8

1    conscious choices made with full knowledge that a problem existed."  Wardell v. Nollette, No.

2    C05-0741RSL, 2006 WL 1075220, at *3 (W.D. Wash. Apr. 20, 20065) (collecting cases); see

3    also Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003) (to impose liability for supervisor's

4    failure to train, "a plaintiff must usually demonstrate a pattern of violations and that the

5    inadequacy of the training is obviously likely to result in a constitutional violation.")

6            Plaintiff's allegations with regard to the failure to train, lack sufficient specificity to state a

7    potentially cognizable claim.  In order to state a claim, for failure to train, plaintiff must identify

8    how the training officers received was inadequate.  Wood v. City of Sacramento, No. 2:2—cv-

9    00497 WBS DB, 2022 WL 36480064 at *1, (E.D. Cal. Aug. 24, 2022).

10                   **A.  No Supervisory Liability**

11           Plaintiff has alleged Sacramento County is liable because the county employs the

12   defendants and that the Sacramento County Sheriff's Department and the Commission on Peace

13   Officer Standards and Training are liable because these entities were responsible for training

14   defendants.  (ECF No. 1 at 6.)

15           Under § 1983, liability may not be imposed on supervisory personnel for the actions or

16   omissions of their subordinates under the theory of respondeat superior.  Ashcroft v. Iqbal, 556

17   U.S. 662, 677 (2009); Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010);

18   Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d

19   930, 934 (9th Cir. 2004).  "A supervisor may be liable only if (1) he or she is personally involved

20   in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the

21   supervisor's wrongful conduct and the constitutional violation."  Crowley v. Bannister, 734 F.3d

22   967, 977 (9th Cir. 2013) (citations omitted); Lemire v. California Dep't of Corr. And Rehab., 726

23   F.3d 1062, 1074-75 (9th Cir. 2013).  "Under the latter theory, supervisory liability exists even

24   without overt personal participation in the offensive act if supervisory officials implemented a

25   policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving

26   force of a constitutional violation."  Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d

27   642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

28   ////

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Canton, 489 U.S. at 388.  Further, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." Id. at 391.  Accordingly, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 62 (2011); Flores v. County of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014).

In order to state a claim plaintiff must allege specific facts explaining how each defendant's action or inaction led to the alleged constitutional violations.  See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).

## AMENDING THE COMPLAINT

As set forth above, the allegations in the complaint fail to state a potentially cognizable claim.  However, plaintiff will be given the opportunity to file an amended complaint.  Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights.  The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant.  The charging allegations must be set forth in the amended complaint, so defendants have fair notice of the claims plaintiff is presenting.  That said, plaintiff need not provide every detailed fact in support of his claims.  Rather, plaintiff should provide a short, plain statement of each claim.  See Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true.  It must contain a request for particular relief.  Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right.  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

1       In an amended complaint, the allegations must be set forth in numbered paragraphs.  Fed.

2 R. Civ. P. 10(b).  Plaintiff may join multiple claims if they are all against a single defendant.  Fed.

3 R. Civ. P. 18(a).  If plaintiff has more than one claim based upon separate transactions or

4 occurrences, the claims must be set forth in separate paragraphs.  Fed. R. Civ. P. 10(b).

5       The federal rules contemplate brevity.  See Galbraith v. County of Santa Clara, 307 F.3d

6 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any

7 heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P.

8 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading).  Plaintiff's claims must be

9 set forth in short and plain terms, simply, concisely and directly.  See Swierkiewicz v. Sorema

10 N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system,

11 which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

12       An amended complaint must be complete in itself without reference to any prior pleading.

13 E.D. Cal. R. 220.  Once plaintiff files an amended complaint, all prior pleadings are superseded.

14 Any amended complaint should contain all of the allegations related to his claim in this action.  If

15 plaintiff wishes to pursue his claims against the defendant, they must be set forth in the amended

16 complaint.

17       By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and

18 has evidentiary support for his allegations, and for violation of this rule the court may impose

19 sanctions sufficient to deter repetition by plaintiff or others.  Fed. R. Civ. P. 11.

20                                               **CONCLUSION**

21     1.  Plaintiff's motions to proceed in forma pauperis (ECF No. 2, 8) are granted.

22     2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

23          is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. §

24          1915(b)(1).  All fees shall be collected and paid in accordance with this court's order

25          to the Director of the California Department of Corrections and Rehabilitation filed

26          concurrently herewith.

27     3.  Plaintiff's complaint (ECF No. 1) is dismissed with leave to amend.

28 ////

4.  Plaintiff is granted thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must bear the docket number assigned to this case and must be labeled "First Amended Complaint."

5.  Failure to comply with this order will result in a recommendation that this action be dismissed.

Dated:  March 1, 2023

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:12
DB/DB Prisoner Inbox/Civil Rights/S/hunt1281.scrn