1

2

3

4

5

6

7

8                                  UNITED STATES DISTRICT COURT

9                             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11      BRANDON EUGENE HUNTER,                      No.  2:22-cv-1281 DB P

12                     Plaintiff,

13            v.                                      ORDER

14      JACKOWITZ, et al.,

15                     Defendants.

16

17           Plaintiff is a county inmate proceeding pro se with a civil rights action pursuant to 42

18    U.S.C. § 1983.  Plaintiff claims defendants used excessive force, subjected him to cruel and

19    unusual punishment, and retaliated against him.  Presently before the court is plaintiff's amended

20    complaint for screening (ECF No. 11).  For the reasons set forth below, the undersigned will give

21    plaintiff the option to proceed with the complaint as screened or file an amended complaint.

22                                          **SCREENING**

23      **I.      Legal Standards**

24           The court is required to screen complaints brought by prisoners seeking relief against a

25    governmental entity or an officer or employee of a governmental entity.  <u>See</u> 28 U.S.C. §

26    1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims

27    that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

28    ////

1  granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28

2  U.S.C. § 1915A(b)(1) & (2).

3        A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

4  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

5  Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

6  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

7  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

8  pleaded, has an arguable legal and factual basis.  See Franklin, 745 F.2d at 1227.

9  Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain

10  statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

11  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell

12  AtlanticCorp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47

13  (1957)).

14        However, in order to survive dismissal for failure to state a claim a complaint must

15  contain more than "a formulaic recitation of the elements of a cause of action;" it must contain

16  factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic,

17  550 U.S. at 555.  In reviewing a complaint under this standard, the court must accept as true the

18  allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.

19  738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all

20  doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

21        The Civil Rights Act under which this action was filed provides as follows:

22      Every person who, under color of [state law] . . . subjects, or causes
    to be subjected, any citizen of the United States . . . to the deprivation

23      of any rights, privileges, or immunities secured by the Constitution .
    . . shall be liable to the party injured in an action at law, suit in equity,

24      or other proper proceeding for redress.

25  42 U.S.C. § 1983.  Here, the defendants must act under color of federal law.  Bivens, 403 U.S. at

26  389.  The statute requires that there be an actual connection or link between the

27  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

28  Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

2

1  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

2  meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

3  omits to perform an act which he is legally required to do that causes the deprivation of which

4  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

5        Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

6  their employees under a theory of respondeat superior and, therefore, when a named defendant

7  holds a supervisorial position, the causal link between him and the claimed constitutional

8  violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);

9  Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations

10  concerning the involvement of official personnel in civil rights violations are not sufficient.  See

11  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

12  **II.      Allegations in the Complaint**

13        Plaintiff states the events giving rise to the allegations in the complaint occurred while he

14  was a pretrial detainee incarcerated at the Sacramento County Main Jail.  (ECF No. 11 at 1, 9.)

15  He has identified the following defendants: (1) deputy Jackowitz; (2) deputy Leonard; (3) deputy

16  Sargetis; (4) deputy Long; (5) deputy Higley; (6) sergeant Allbee; (7) sergeant Wade; (8)

17  lieutenant Ayers; (9) sergeant Brace; and (10) Sacramento County.  (Id. at 1-4.)

18        Plaintiff alleges on February 1, 2022, deputy Romig told plaintiff he had a visit and he had

19  contacted medical on plaintiff's behalf via plaintiff's cell intercom.  (Id. at 5.)  Romig unlocked

20  plaintiff's cell form the control booth.  Plaintiff exited his cell and approached the control booth

21  to check in.  Jackowitz and Romig were in the control booth.  Plaintiff told them his name and

22  asked why the contacted medical.  (Id.)  Romig told plaintiff to "shut the fuck up and go to [his]

23  visit."  Plaintiff asked why Romig was talking to him in that manner and told Romig he needed to

24  apologize.  Plaintiff approached the door to talk to Jackowitz, but Jackowitz did not walk out of

25  the booth.  (Id.)

26        Multiple deputies began to approach plaintiff as Jackowitz stepped out of the booth.  The

27  deputies told plaintiff to go back to his cell.  Plaintiff began walking back to his cell.  On his way

28  he informed the deputies what happened and told them he wanted to speak to the sergeant.  (Id.)

1 | Jackowitz pushed plaintiff in the back for no reason even though plaintiff was walking back to his

2 | cell as instructed.  (<u>Id.</u> at 5-6.)  Plaintiff told Jackowitz there was no reason to put his hands on

3 | plaintiff as he kept walking to his cell.  (<u>Id.</u> at 6.)  Plaintiff then heard another deputy say, "Lets

4 | [sic] just take him down."

5 |       Jackowitz tried to grab plaintiff's left arm, Sargetis tried to grab plaintiff's right arm, and

6 | Higley grabbed plaintiff's shirt from behind.  (<u>Id.</u>)  Plaintiff was not told to put his hands behind

7 | his back, get on the ground, or cuff up.  Higley tackled plaintiff to the ground and Leonard pinned

8 | plaintiff's left arm to the floor.  Higley slammed plaintiff's head on the floor approximately six to

9 | seven times.  Long and Sargetis pinned his legs to the floor while Higley handcuffed him.  (<u>Id.</u>)

10 |       The deputies tried to put plaintiff back in his cell without providing plaintiff with medical

11 | attention even though he had visible injuries.  (<u>Id.</u> at 6-7.)  Sergeant Wade instructed deputies to

12 | take plaintiff to medical.  On the way to medical, Leonard temporarily placed plaintiff in a choke

13 | hold for a few seconds.  (<u>Id.</u> at 7.)

14 |       Plaintiff states he did not receive an x-ray of his face, his cuffs were too tight, and he was

15 | not prescribed pain medication.  (<u>Id.</u>)  Plaintiff was returned to his cell in a wheelchair because

16 | his injuries made it difficult to walk.  Plaintiff states the light in his cell was broken and he sat in

17 | total darkness that night.

18 |       Plaintiff alleges that he is "not sure how long Sergeant Wade and Allbee were present

19 | [sic], but [he] believe[s] they both" observed Leonard place him in a choke hold and did not stop

20 | him or remove plaintiff from the situation.

21 |       Plaintiff alleges Sergeant Wade responded to plaintiff's grievance about the incident.  (<u>Id.</u>

22 | at 8.)  In Wade's response, he states he arrived on scene after plaintiff was on the ground, plaintiff

23 | was not placed in a choke hold, and that plaintiff was at fault for the incident.  Plaintiff states to

24 | further cover up their actions Leonard "wrote [plaintiff] up for the incident," Wade "reviewed the

25 | write up," and Brace "had the hearing, but did not give [plaintiff] due process because [he] did

26 | not receive a copy of the write up before the hearing.  Plaintiff states Ayers upheld Wade's

27 | findings and proposed discipline.  (<u>Id.</u>)

28 | ////

4

1    Plaintiff states he believes Sacramento County is liable because Sacramento Sheriff's

2    Deputies using unnecessary excessive force on inmates has become a "systemic custom."  (Id. at

3    9.)  He states he has "seen many lawsuits filed by other people ag[a]inst Sacramento County" and

4    "to support [his] Monell Claim of a custom or pattern, plaintiff cites 'Hunter v. Cnty. of

5    Sacramento case No. 2:06-cv-00457-GEB-EFB (9th Cir. July 26, 2011).'"  (Id.)

6    **III.    Does Plaintiff State a Claim under § 1983?**

7        **A. Excessive Force**

8    Plaintiff alleges officers used force against him even though he was complying with their

9    commands.

10    The right of pretrial detainees to be free from excessive force is guaranteed by the Due

11    Process Clause of the Fourteenth Amendment and is governed by Fourth Amendment standards.

12    Kinsley v. Hendrickson, 576 U.S. 389, 397-98, 399 (2015).  To state a claim for excessive force

13    under the Fourteenth Amendment, a pretrial detainee must show that "the force purposely or

14    knowingly used against him was objectively unreasonable."  Id. at 389; see also Graham v.

15    Connor, 490 U.S. 386, 396 (1989) (objective reasonableness turns on the facts and circumstances

16    of each particular case).

17    Plaintiff states that while he was walking back to his cell as ordered, officers Jackowitz,

18    Sargetis, and Higley grabbed him from behind.  (ECF No. 11 at 6.)  Higley tackled him to the

19    ground, Leonard pinned plaintiff's arm to the floor, and Higley slammed plaintiff's head on the

20    floor.  (Id.)  Plaintiff has also alleged that as he was being taken to medical, Leonard placed him

21    in a chokehold The court finds such allegations sufficient to state a potentially cognizable

22    excessive force claim against defendants Jackowitz, Sargetis, Higley, and Leonard.

23    Plaintiff has also alleged that officers "Long and Sargetis pinned [his] legs to the floor and

24    Higley Handcuffed [him]."  (Id.)  Plaintiff has not alleged sufficient facts for the court to

25    determine whether this action was objectively unreasonable under the circumstances.

26    Accordingly, the court finds the allegations insufficient to state a potentially cognizable excessive

27    force claim against defendant Long.

28    ////

5

1

   **B.  Failure to Protect**

2      Plaintiff claims officers observed Leonard use excessive force against him and failed to

3  intervene or stop the use of force.

4      The Ninth Circuit has stated that in order to state a failure to protect claim a pretrial

5  detainee must allege facts showing: "(1) The defendant made an intentional decision with respect

6  to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at

7  substantial risk of suffering serious harm; (3) The defendant did not take reasonable available

8  measures to abate that risk, even though a reasonable officer in the circumstances would have

9  appreciated the high degree of risk involved—making the consequences of the defendant's

10  conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's

11  injuries." Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016).

12      Plaintiff stated that he "believes" both Wade and Allbee were present and observed

13  Leonard place him in a chokehold and did not stop Leonard or remove plaintiff from the situation.

14  (ECF No. 11 at 7.)  On screening the undersigned is required to take as true the allegations in the

15  complaint.  Thus, the allegations in the complaint are sufficient to state a potentially cognizable

16  failure to protect claim against defendants Wade and Allbee.

17

   **C.  Denial of Medical Care**

18      Plaintiff claims he did not receive adequate medical treatment for injuries incurred when

19  he was tackled and restrained.

20      To state a claim, plaintiff must allege facts showing: (1) in detail, just what each defendant

21  did; (2) that each defendant's conduct was unreasonable; (3) that plaintiff had a serious medical

22  need; (4) that each defendant knew of that need; and (5) that plaintiff suffered harm.  See Gordon

23  v. Cnty. of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018).

24      Plaintiff has alleged that no x-rays were taken and he was not given pain medication.

25  (ECF No. 11 at 7.)  Such allegations could support a cognizable denial of medical care claim

26  under the Fourteenth Amendment.  However, he has not indicated which defendants were

27  responsible for failing to provide adequate medical care.  In the absence of such facts the

28  ////

6

1  undersigned finds that the complaint fails to allege a potentially cognizable denial of medical care

2  claim.

3               **D.  Procedural Due Process in Disciplinary Hearing**

4        Plaintiff alleges officers authored a false disciplinary report blaming him for the incident

5  and that he was deprived of due process during the disciplinary process.

6        The filing of a false report by correctional officials is not a per se violation of the

7  constitution.  See Muhammad v. Rubia, No. C 08-3209 JSW (PR), 2010 WL 1260425, at *3

8  (N.D. Cal. Mar. 29, 2010), aff'd, 453 Fed. Appx. 751 (9th Cir. 2011) ("[A] prisoner has no

9  constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which

10 may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded

11 procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a

12 claim under § 1983.") (citations omitted); Harper v. Costa, No. CIV S-07-2149 LKK DAD P,

13 2009 WL 1684599, at *2-3 (E.D. Cal. June 16, 2009), aff'd, Fed. Appx. 488 (9th Cir. 2010).

14       There are, however, two ways that allegations that an inmate has been subjected to a false

15 disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges that the

16 false disciplinary report was filed in retaliation for his exercise of a constitutional right and (2)

17 when the prisoner alleges that he was not afforded procedural due process in a proceeding

18 concerning the false report.  See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[T]his

19 court has reaffirmed that prisoners may still base retaliation claims on harms that would not raise

20 due process concerns."); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (holding that the

21 diling of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison

22 officials provide the prisoner with procedural due process protections); Hanrahan v. Lane, 747

23 F.2d 1137, 1140-41 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence

24 which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can

25 be granted where the procedural due process protections as required in Wolff v. McDonnell are

26 provided.").

27       Inmates subjected to disciplinary action are entitled to certain procedural protections

28 under the Due Process Clause, although they are not entitled to the full panoply of rights afforded

                                        7

1  to criminal defendants.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also

2  Superintendent v. Hill, 472 U.S. 445, 455-56 (1985).  Disciplinary actions are subject to the

3  following procedural requirements under Wolff: (1) written notice of the charges; (2) a hearing,

4  with at least 24-hours advance notice; (3) a written statement by the fact finders of the evidence

5  relied on and the reasons for taking disciplinary action; (4) the prisoner's right to call witnesses in

6  his or her defense, if doing so would not be unduly hazardous to institutional safety or

7  correctional goals; and (5) legal assistance to prisoners who are illiterate or whose issues are

8  particularly complex.  Wolff, 418 U.S. at 556-71.  The requirements set forth in Wolff apply to

9  pretrial detainees.  Bell v. Wolfish, 441 U.S. 520, 546 (1979).

10       Plaintiff claims that he received a write up for the incident.  He states, Leonard authored

11  the write up, Wade reviewed it, Brace held the hearing, and Ayers concurred with Wade's

12  findings and proposed discipline.  Plaintiff has further alleged that "Brace had the hearing, but did

13  not give [him] due process because [he] did not receive a copy of the write up before the

14  hearing."  (ECF No. 11 at 8.)

15       While a false disciplinary report on its own may be insufficient to state a potentially

16  cognizable claim.  Plaintiff has also alleged that he did not receive due process during the hearing

17  process because he did not receive written notice of the charges.  Failure to provide plaintiff with

18  written notice of the charges could support a potentially cognizable due process claim.

19  Accordingly, the undersigned finds the allegations sufficient to state a due process claim against

20  defendants Leonard, Wade, Brace, and Ayers.

21          **E.  Municipal Liability**

22       Plaintiff alleges Sacramento County is liable because Sacramento Sheriff's Deputies use

23  of excessive force against inmates "has become a systemic custom."  (ECF No. 11 at 9.)  He

24  states he has "seen many lawsuits filed by other people against Sacramento County" and also

25  cites Hunter v. County of Sacramento, 652 F.3d 1225 (9th Cir. 2011) in support of his allegations.

26  (Id.)

27       "In order to establish municipal liability, a plaintiff must show that a 'policy or custom'

28  led to the plaintiff's injury."  Castro v. County of Los Angeles, 833 F.3d 1060, 1073 (9th Cir.

2016) (quoting Monell, 436 U.S. at 694).  Liability for a custom or practice will only attach if a

plaintiff pleads facts showing that his injury was caused by a "permanent and well-settled"

practice.  Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989) overruled on

other grounds by Bull v. City and County of San Francisco, 595 F.3d 964 (9th Cir. 2010).

      The court finds plaintiff's allegations too vague and conclusory to state a potentially

cognizable claim.  See Fagan v. County of Sacramento, 2016 WL 1366994, at *2 (dismissing

Monell claim where plaintiff argued Hunter v. County of Sacramento, 652 F.3d 1225 (9th Cir.

2011) established a basis for his allegation that the Sacramento County jail has a custom of using

excessive force); Garrison v. Bautista, No. 2:13-cv-0479 JAM KJN P, 2014 WL 6390865, at *3

(E.D. Cal. Nov. 17, 2004) (upholding dismissal Monell claim alleging "practice, policy, or

custom of allowing . . . Officers to use excessive force" and stating "Magistrate Judge properly

characterized plaintiff's proposed claim as no more than a 'naked assertion.'")  Accordingly, the

allegations are insufficient to state a claim against Sacramento County.

### AMENDING THE COMPLAINT

      As set forth above, the allegations state potentially cognizable claims and fail to state

potentially cognizable claims.  Accordingly, plaintiff will be given the option to proceed with the

complaint as screened or to file an amended complaint.  Plaintiff is advised that in an amended

complaint he must clearly identify each defendant and the action that defendant took that violated

his constitutional rights.  The court is not required to review exhibits to determine what plaintiff's

charging allegations are as to each named defendant.  The charging allegations must be set forth

in the amended complaint, so defendants have fair notice of the claims plaintiff is presenting.

That said, plaintiff need not provide every detailed fact in support of his claims.  Rather, plaintiff

should provide a short, plain statement of each claim.  See Fed. R. Civ. P. 8(a).

      Any amended complaint must show the federal court has jurisdiction, the action is brought

in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true.  It must

contain a request for particular relief.  Plaintiff must identify as a defendant only persons who

personally participated in a substantial way in depriving plaintiff of a federal constitutional right.

Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation

of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

In an amended complaint, the allegations must be set forth in numbered paragraphs.  Fed. R. Civ. P. 10(b).  Plaintiff may join multiple claims if they are all against a single defendant.  Fed. R. Civ. P. 18(a).  If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs.  Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity.  See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading).  Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220.  Once plaintiff files an amended complaint, all prior pleadings are superseded. Any amended complaint should contain all of the allegations related to his claim in this action.  If plaintiff wishes to pursue his claims against the defendant, they must be set forth in the amended complaint.

By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others.  Fed. R. Civ. P. 11.

## CONCLUSION

1. Plaintiff's amended complaint (ECF No. 11) states potentially cognizable (1) excessive force claim against defendants Jackowitz, Sargetis, Higley, and Leonard; (2) failure to protect claim against defendants Wade and Allbee; and (3) a due process claim against defendants Leonard, Wade, Brace, and Ayers as set forth in Section III above.  The complaint does not contain any additional cognizable claims.

////

1        Accordingly, plaintiff will have the option to proceed with the complaint as screened

2        or amend the complaint.

3    2.  Within thirty (30) days from the date of this order, plaintiff shall fill out and return the

4        attached form indicating who he would like to proceed in this action.

5    3.  Failure to comply with this order will result in a recommendation that this action be

6        dismissed.

7   Dated:  June 11, 2023

8

9                                                                    _____
                                                     DEBORAH BARNES
10                                                   UNITED STATES MAGISTRATE JUDGE

11   DB:12
     DB/DB Prisoner Inbox/Civil Rights/S/hunt1281.scrn
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                   FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9    BRANDON EUGENE HUNTER,                    No.  2:22-cv-1281 DB P

10                    Plaintiff,

11        v.                                   NOTICE OF ELECTION

12   JACKOWITZ, et al.,

13                    Defendants.

14

15   Check one:

16   _____    Plaintiff wants to proceed immediately on his (1) excessive force claim against

17            defendants Jackowitz, Sargetis, Higley, and Leonard; (2) failure to protect claim against

18            defendants Wade and Allbee; and (3) a due process claim against defendants Leonard,

19            Wade, Brace, and Ayers.  Plaintiff understands that by going forward without amending

20            the complaint he is voluntarily dismissing all other claims.

21

22   _____    Plaintiff wants to amend the complaint.

23

24   DATED:_____

25

26                                             _____
                                               Brandon Eugene Hunter
27                                             Plaintiff pro se

28

                                    12